No. 3-03-0775

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

EDWARD E. BUSH,

Plaintiff-Appellant,

v.

THE CATHOLIC DIOCESE OF PEORIA, THE MOST REVEREND BISHOP DANIEL R. JENKY, and MONSIGNOR STEVEN P. ROLPHS,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of the 10th
 Judicial Circuit

Peoria County, Illinois

No. 02-L-325

Honorable Scott A. Shore,

Judge, Presiding

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

JUSTICE LYTTON delivered the Opinion of the court:

Plaintiff, Edward Bush, filed a defamation suit against defendants, the Catholic Diocese of Peoria, Bishop Daniel Jenky, and Monsignor Steven Rolphs, claiming that defendants falsely and publicly accused plaintiff of sexually assaulting two young girls in the early 1960's. The trial court entered a protective order prohibiting the parties from revealing the alleged victims’ names or other identifying information to the general public or the media.  We find the order constitutional and drafted narrowly enough to protect the alleged victims and also to permit both parties to engage in full pretrial investigation and discovery.

 On May 30, 2002, the Catholic Diocese issued a press release stating that the Diocese had asked certain priests to step down from the public ministry based on recent allegations of sexual misconduct against them.  The release went on to list plaintiff as one of the defrocked priests: "Edward Bush, 70, former pastor of St. Patrick, Colona." 

Plaintiff filed a multi-count complaint against defendants alleging defamation 
per se
 and 
per quod
, false light, public disclosure of private facts, and breach of contract. Defendants moved for a protective order to keep the identities of the alleged sexual abuse victims confidential.  The trial court entered a protective order on May 14, 2003, which stated:

Statements of victims or alleged victims produced in this case should not be reproduced in full, in part, or in summary form, and information contained therein shall not be re-disclosed, outside of the attorneys, their staff, their client, their investigators, or the author of such information or others directly involved in trial preparation, without prior leave of the court.

Discovery continued, and plaintiff moved to vacate the protective order. That motion was denied, but the court did order defendants to provide the names and addresses of the alleged sexual abuse victims, as well as the names and addresses of witnesses and persons claiming to be witnesses to sexual abuse by plaintiff.  In response, defendants filed a motion for an emergency order for protection on September 16, 2003, to extend the original order to cover any information which identified the alleged victim and witnesses. The circuit court allowed the motion and amended the order of protection.  The court reaffirmed the May 14 order and added the following:

However, notwithstanding the provisions of paragraph (1) above, the parties shall be permitted to conduct discovery and investigation of the claims and defenses, and shall be permitted to interview witnesses or persons believed to have relevant knowledge and/or information regarding the alleged victims, as well as conduct depositions of such witnesses or persons.

Plaintiff filed this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). Ill. Sup. Ct. R 307(a)(1).

The trial court’s decision to issue a protective order will not be overturned absent an abuse of discretion. 
Amoco Oil Co. v. Segall
, 118 Ill. App. 3d 1002 (1983). 

I.  Standing

Plaintiff argues that by obtaining the protective order, defendants were protecting the rights of the alleged victims and not their own, and thus, defendants lack standing to ask for the order because their interests are not implicated nor could they suffer injury from disclosure of the information. We disagree.

Subsection (c)(1) of Illinois Supreme Court Rule 201 permits the court to issue a protective order as justice requires. Ill. Sup. Ct. R 201(c)(1). Specifically, the rule provides, "[t]he court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." Ill. Sup. Ct. R 201(c)(1).

Plaintiff frames his argument in a traditional discussion of standing, that is, whether defendants have a legal interest entitling them to the relief provided by the protective order.  See 
Flynn v. Ryan
, 199 Ill. 2d 430, 436 (2002). However, the traditional notions of standing required when seeking judicial relief are not present here.  Rule 201(c) empowers the court to issue protective orders as justice requires, without regard to who requests the relief.  Indeed, the rule allows the court to issue a protective order on its own initiative. Under Rule 201(c), the court, or any party or witness must establish only that justice requires the protective order. The rule does not require the petitioner to establish or even assert standing to seek the order.  This order protecting alleged victims of sexual abuse is directly related to the goals of Rule 201(c), that is, preventing unreasonable annoyance, embarrassment or oppression. Therefore, the court had the power to include the alleged victims as protected parties under the order.

II.  Prior Restraint

Plaintiff argues that the protective order constitutes an unconstitutional prior restraint on speech under the First Amendment.  

In 
Seattle Times Co., v. Rhinehart
, 467 U.S. 20 (1984), the United States Supreme Court considered the constitutionality of pretrial protective orders issued to prevent dissemination of discovered information. 
Seattle Times
 involved claims of defamation and invasion of privacy brought by a religious organization and its spiritual leader against the Seattle Times newspaper. The trial court entered a protective order prohibiting the newspaper from disseminating or using information it discovered from the religious group regarding membership and donations, except in ways necessary to prepare its defense. The Seattle Times claimed that the order violated its First Amendment rights. The Court rejected the newspaper's contention that a protective order, entered after a showing of good cause, offends the First Amendment. It held that a protective order does not violate the First Amendment when it is limited to the context of pretrial civil discovery and does not restrict the dissemination of the information if gained from other sources. 
Seattle Times
, 467 U.S. at 37.

In this case, plaintiff argues that in communications with defendants prior to the filing of the lawsuit, defendants disclosed the names of the alleged victims and accounts of the circumstances surrounding the alleged assaults.  Plaintiff claims that 
Seattle Times
 does not permit trial courts to prohibit the dissemination of that information.

The Court in 
Seattle Times
 held that a litigant has no First Amendment right of access to information made available solely for the purposes of trying his suit. 
Seattle Times
, 467 U.S. at 32. In this case, certain information such as names and accounts of the assault were made available to plaintiff by defendants in the course of communications between plaintiff, Bishop Jenky and Monsignor Rohlfs.  Those private conversations were conducted in an effort to resolve the dispute.  At the meetings, plaintiff was given the names of the alleged victims and agreed to obey the request of the Diocese that he no longer publicly function as a priest.  While the information was provided before suit was filed, it shares the same characteristics as information gathered in formal pretrial discovery. For example, like facts gained through discovery, the information plaintiff obtained from defendants was acquired privately and between the parties, and it was required to aid plaintiff in determining an appropriate legal response.  See 
Seattle Times
, 467 U.S. at 32-33.
 
 For these reasons, 
Seattle Times
 protects certain information gained during the course of a civil action.  Given the unique factual circumstances of this case and the Court’s analysis in 
Seattle Times
, plaintiff has no First Amendment right to freely disseminate that information.  

Furthermore, though 
Seattle Times
 does not "restrict the dissemination of the information if gained from other sources,"
 it does protect information gained from defendants.  
Seattle Times
, 467 U.S. at 37. The source is not independent from or different than the source in the discovery process; it is identical. The 
Seattle Times
 exception applies to information gathered from sources independent of those involved in the discovery process. When courts prohibit that dissemination, judicial action more closely resembles a classic type of improper prior restraint. The protective order in this case prohibits the dissemination of information gathered from defendants in preparation for trial and is proper under 
Seattle Times
.

III.  The Protective Order’s Impact on Discovery

Plaintiff argues that the protective order is overbroad because it prohibits him from engaging in pretrial interviews and investigations. Defendants respond that the order specifically allows plaintiff to use the protected information in pretrial investigations and discovery.

The first paragraph of the protective order prohibits the parties from disclosing the names or other identifying information of the alleged victims to anyone other than the parties, their attorneys and staff, their investigators or others involved in trial preparation.  The first paragraph prohibits the disclosure of any information that would identify the alleged victims.  If that were the entirety of the order, plaintiff would have a compelling argument that his ability to conduct pretrial investigation was limited.

However, the second paragraph provides a clear exception to the general prohibition established in paragraph (1):

"notwithstanding the provisions of paragraph (1) above, the parties shall be permitted to conduct discovery and investigation of the claims and defenses, and shall be permitted to interview witnesses or persons believed to have relevant knowledge and/or information regarding the alleged victims, as well as conduct depositions of such witnesses or persons."

The second paragraph begins with the word "notwithstanding," which is defined as "without prevention or obstruction from or by." Webster’s Third International Dictionary 1545 (1976). Thus, the trial judge excepted from the strictures of paragraph 1 the use of any information to conduct discovery and pretrial investigation. Both parties are allowed to use the protected information during pretrial investigation and discovery, but are only prohibited from disclosing the information to the general public or media.  

The order is not overbroad; it was written carefully and narrowly enough to protect the alleged victims from potential embarrassment or intimidation while still permitting the parties to engage in full pretrial investigation and discovery. Our reading of the second paragraph of the order removes any claimed impediments to discovery for either party.

CONCLUSION

The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

MCDADE and SLATER, JJ., concurring.